# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL BRANDON ADAMS, ) | |
| ) | |
| PLAINTIFF, ) | No. 3:14-cv-00020 |
| ) | Judge Campbell/Brown |
| v. ) | |
| ) | |
| JASON WOODALL, et al., ) | |
| ) | |
| DEFENDANTS. ) | |

To: The Honorable Judge Todd J. Campbell, United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion for Temporary Restraining Order (TRO) and Preliminary Injunction. (Docket Entry 80). For the reasons stated below, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED.** The Magistrate Judge further **RECOMMENDS** that Plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum (Docket Entry 87) be **DENIED** as moot.

## I.   Background and Procedural History

Plaintiff, proceeding *pro se* and *in forma pauperis*, is a Tennessee Department of Corrections (TDOC) inmate at Riverbend Maximum Security Institution (RMSI). (Docket Entry 83). He was previously at other institutions, including West Tennessee State Prison (WTST); and Charles Bass Correctional Complex (CBCC). (Docket Entry 67). Plaintiff filed his Complaint alleging violation of civil rights under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Docket Entry 1 and 67). On January 24, 2014, the District Judge referred this action to the Magistrate Judge. (Docket Entry 4).

On June 30, 2014, Plaintiff filed the instant Motion to accompany a previously filed Memorandum and Declaration. (Docket Entry 70; 71 and 80). Plaintiff seeks the ability to receive religious items directly from vendors other than the TDOC designated vendor, Union Supply. (Docket Entry 80, p. 1). Plaintiff also seeks the ability to receive meals consistent with his religion, referred to as "Halaal meals." (Docket Entry 80, p. 2). Plaintiff specifically seeks the ability to order such meals from the vendor, Halalco Books or to be provided with "fish, tuna salad, peanut butter, and vegetable burgers . . . ; [t]wo [f]ruits . . . ; [t]wo [v]egetables and . . . [b]read with every meal . . . ." (Docket Entry 80, p. 2). Finally, Plaintiff seeks to be provided Halaal meals during and at the end of the Holy month of Ramadaan. (Docket Entry 80, p. 2).

On July 21, 2014, after Plaintiff had filed the instant Motion, he was transferred to RMSI. (Docket Entry 83). Defendant has since filed a Response in Opposition and supporting affidavits. (Docket Entry 90-93). Plaintiff filed an unsigned and untimely Reply. (Docket Entry 102). Nevertheless, the Magistrate Judge considered it.

## II.     Standard of Review

The Court must balance the following factors when deciding whether to grant a motion for a TRO or a preliminary injunction:

1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiff has shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

Federal Rule of Civil Procedure (FED. R. CIV. P.) 65(a)-(b); *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007); *Newsom v. Norris*, 888 F.2d 371, 373 (6th Cir. 1989). Such relief is

considered an "extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002)(citation omitted).

However, "[n]otwithstanding this balancing approach, [w]hen a party seeks a preliminary injunction on the basis of a potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009)(citation and internal quotation omitted). To determine whether a plaintiff will succeed on the merits of a First Amendment claim, the Court must apply the *Turner v. Safley* factors:

1) [T]here must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2) [T]here must be alternative means of exercising the right that remain open to prison inmates;

3) [W]e must consider the impact that accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally; and

4) [T]here must not be alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Jones,* 569 F.3d at 266-67; 270 (citing *Turner v. Safley,* 482 U.S. 78, 89–91 (1987)).

### III. Analysis

Plaintiff seeks relief pursuant to the First Amendment, the Fourteenth Amendment, and the RLUIPA. (Docket Entry 67). In order to state a claim generally under 42 U.S.C. § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citation omitted). The Court will analyze a First Amendment claim as explained above. However, to state an equal protection claim under §

1983, a plaintiff must prove "the existence of purposeful discrimination." *McCleskey v. Kemp,* 481 U.S. 279, 292 (1987)(citation and internal quotation omitted).

Separately, under the RLUIPA, there is "expansive protection for religious liberty." *Holt v. Hobbs,* 135 S. Ct. 853, 860 (2015). RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Under RLUIPA, a plaintiff may request an accommodation to a prison policy that "implicates his religious exercise" and is "sincerely based on a religious belief . . . ." *Holt,* 135 S. Ct. at 862. A plaintiff must also prove that the disputed policy substantially burdens his religious exercise. *Holt,* 135 S. Ct. at 862. Once a plaintiff meets his burden, then the burden shifts to the defendant to meet a compelling interest standard. *Holt,* 135 S. Ct. at 863.

Here, the Magistrate Judge is not persuaded that the Court should grant the instant Motion for a TRO or a preliminary injunction because Plaintiff fails to show a likelihood of success under § 1983 or a substantial burden on his religious exercise under the RLUIPA.

### A. Denial of Religious Vendors and Religious Items

Plaintiff's claim in which he seeks to order items from a vendor of his choice instead of the TDOC designated vendor is premised on the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment.[1] (Docket Entry 70, p. 3). Plaintiff argues that the restriction on vendors is causing him to go without a kufi, prayer beads, and prayer oil. (Docket Entry 70, p. 2). He also seeks to order a ring, prayer shawl, prayer rug,

---

1 Defendant writes "the Free Exercise Clause of the Eighth Amendment . . . ." (Docket Entry 70, p. 3). However, the Magistrate Judge construes this to mean the Free Exercise Clause of the First Amendment.

miswak sticks, and hygiene products from unapproved vendors. (Docket Entry 70, p. 8). Plaintiff also argues that Union Supply does not sell any religious necklaces for Muslim inmates. (Docket Entry 70, p. 3). Plaintiff states in his Amended Complaint that he is forced to go without these items "instead of being able to utilize Halal/Islamic vendors . . . . Also, any form of donations of these said items . . . have to be purchased from the Union Supply. . . ." (Docket Entry 67, p. 18). Moreover, Plaintiff argues that the prices of Union Supply's items force him to participate in "usury." (Docket Entry 67, p. 20).

Taking Plaintiff's First Amendment claim at the outset and considering the first *Turner v. Safley* factor, the Magistrate Judge finds that "[p]rison officials have a legitimate interest in ensuring that prisoners are not sent contraband through the mail. Therefore, prison regulations which require inmates to purchase goods only from authorized vendors have been upheld as valid by this court." *Spruytte v. Feighner,* 16 F.3d 1221, at *1 (6th Cir. 1994)(citation omitted)(unpublished opinion). The policy of restricting vendors therefore satisfies this first factor and "the remaining factors are considered and balanced together as 'guidelines' by which the court can assess whether the challenged actions are reasonably related to a legitimate penological interest." *Jones,* 569 F.3d at 267(citation omitted). The Magistrate Judge finds that these factors also weigh in favor of Defendants.

As stated in the affidavit of Jeannie Alexander, Chaplain of RMSI, all of Plaintiff's requested items are "readily available from Union Supply . . . ." (Docket Entry 92, p. 1). Plaintiff can also work with the Chaplain to receive items from local organizations when items offered by Union Supply are insufficient or Plaintiff is unable to afford them. (Docket Entry 92, p. 2). Plaintiff has already worked with the Chaplain to find an appropriately fitting kufi and although Union Supply apparently has no Muslim necklaces, the Chaplain is prepared to obtain one for

Plaintiff "from an alternate vendor[], or by way of donation . . . ." (Docket Entry 92, pp. 2-3). Therefore, to the extent that there is a right to possession of these items, the Magistrate Judge finds that there are alternative means of exercising that right. The Magistrate Judge also finds that the prospect of screening multiple vendors would burden resources and pose more than a de minimis cost to valid penalogical interests. As Defendants note, there are 21,000 TDOC inmates and "it would place an impossible burden on TDOC to screen each [inmate's] individual vendor . . . ." (Docket Entry 90, p. 13). Therefore, the Magistrate Judge finds that Plaintiff fails to show any likelihood of success on the merits of this claim.

Considering an equal protection claim, Plaintiff argues that although Union Supply "sells religious necklaces for different faith-based groups, there is not a single religious necklace for Muslim inmates." (Docket Entry 70, p. 3). However, Plaintiff offers no facts to suggest that any Defendant engaged in purposeful discrimination to deny him Muslim jewelry. Moreover, the Chaplain at RMSI is prepared to assist Plaintiff in obtaining unavailable items such as a necklace. (Docket Entry 90-2, pp. 2-3). The Chaplain states that Plaintiff can "receive a necklace from the free world, provided that it does not exceed 24 inches in length and does not exceed a maximum replacement value of $30.00." (Docket Entry 90-2, p. 2). Therefore, Plaintiff fails to show a likelihood of success on this claim.

Under the RLUIPA, the Magistrate Judge finds that Plaintiff fails to show a substantial burden on his religious exercise to shift the burden to Defendants. In *Holt v. Hobbs*, the plaintiff "easily satisfied that obligation" because the disputed policy, which prohibited inmates from growing beards, required the plaintiff to shave his beard and therefore substantially burdened his religious exercise. *Holt,* 135 S. Ct. at 862. The plaintiff therein was faced with contravening policy by growing his beard or contravening the mandate of his religion by shaving. *Holt,* 135 S.

Ct. at 862. Here, however, Plaintiff has not shown that he is similarly faced with "engag[ing] in conduct that seriously violates [his] religious beliefs." *Holt,* 135 S. Ct. at 862 (citation and internal quotations omitted). Plaintiff argues that he is being forcefully "subjected to . . . 'usury' due to the relatively sky-rocketed prices of . . . Union Supply" and he cites the Holy Qur'an for the premise that usury is forbidden. (Docket Entry 67, pp. 20-22). He lists the purportedly "inflated" prices in the Union Supply catalog and compares them to prices in a catalog from the vendor, Halalco. (Docket Entry 67, pp. 21-23). Nonetheless, Plaintiff's pleadings amount to conclusory statements. Plaintiff fails to show that the restriction against usury includes a restriction against purchasing products at "inflated prices" or that Union Supply's prices qualify as usurious. Therefore, the Magistrate Judge finds that Plaintiff fails to show a substantial burden on his religious exercise.

### B. Denial of Religious Meals

Plaintiff also fails to show a likelihood of success on his claim in which he seeks to order Halaal meals from his preferred vendor or to be provided with certain food. To the extent that he seeks to order Halaal meals from unapproved vendors, this does not warrant relief for the same reasons explained above. To the extent that he requests different meals, the Sixth Circuit has held that "[i]f the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Alexander v. Carrick,* 31 F. App'x 176, 179 (6th Cir. 2002)(unpublished opinion). In Plaintiff's Reply, filed after his transfer to RMSI, he writes:

> Plaintiff does not deny that he is given the pre-packaged meals that he has been requesting . . . [b]ut, the Plaintiff has had to sign up to be on the Jewish Kosher meal diet in order to receive these meals which he should not have to be forced to do being that he is a devout Orthodox Muslim. The Plaintiff's issue is that the so called Halaal menu that was instituted on August 1, 2013 is not a Halaal menu at all.

(Docket Entry 102, p. 4). Therefore, Plaintiff acknowledges that he is receiving the requested meals and case law sets out no right to receive meals without the purportedly unsuitable "sign up" that Plaintiff describes. Also, as Defendants point out, "the only food choice that [Plaintiff] desires, but which apparently is not offered, is peanut butter." (Docket Entry 90, p. 16). Simply, "Muslim prisoners do not have a right under the First Amendment or the RLUIPA to be provided halal meat entrees; rather, a correctional facility need only provide Muslim prisoners with food that is not 'haram' (impermissible)." *Cloyd v. Dulin,* No. 3:12-CV-1088, 2012 WL 5995234, at *4 (M.D. Tenn. Nov. 30, 2012)(citing *Abdullah v. Fard,* No. 97–3935, 1999 WL 98529 at *1 (6th Cir. Jan.28, 1999)(unpublished opinion)). Indeed, Plaintiff concedes that he is receiving the pre-packaged meals that he has been requesting.

Plaintiff again fails to show that he would succeed on an equal protection claim because he concedes that TDOC officials created a menu, albeit unsatisfactory to Plaintiff, to accommodate those who practice Plaintiff's religion. Plaintiff therefore fails to show any purposeful discrimination and any likelihood of success on this claim.

To be clear, as to all of the claims, Plaintiff also fails to show irreparable injury; whether the relief sought would cause harm to others, or how the public interest would be served by such relief. Therefore, the Magistrate Judge finds that the Court should deny the instant Motion.

Finally, the Magistrate Judge would find Plaintiff's claim moot to the extent that he seeks relief regarding "the Eid-ul-Fitr meal ("feast") . . . scheduled to begin on June 29, 2014 . . . as well as the Eid-ul-Adha meal ("feast") which . . . occurs within forty-five (45) to sixty (60) days after the Eid-ul-Fitr celebration." (Docket Entry 70, p. 7). Plaintiff presents no evidence establishing any expectation of being transferred back to one of the institutions where he was

purportedly unable to get his requested daily meals or "feast" meals. *See Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975); *Colvin,* 605 F.3d at 289.

## IV. Recommendation

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED.** The Magistrate Judge further **RECOMMENDS** that Plaintiff's Petition for Writ of Habeas Corpus Ad Testificandum (Docket Entry 87) be **DENIED** as moot.

Under FED. R. CIV. P. 72(b), the parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 26th day of February, 2015

/s/Joe. B. Brown
Joe B. Brown
United States Magistrate Judge