# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL BRANDON ADAMS, ) | |
| ) | |
| PLAINTIFF, ) | No.  3:14-cv-00020 |
| ) | Judge Campbell/Brown |
| v. ) | |
| ) | |
| JASON WOODALL, et al., ) | |
| ) | |
| DEFENDANTS. ) | |

To: The Honorable Judge Todd J. Campbell, United States District Judge

## REPORT AND RECOMMENDATION

Pending before the Court are two motions. For the reasons stated below, the Magistrate Judge **RECOMMENDS** that Defendant's Motion to Dismiss or for Summary Judgment (Docket Entry 104) be **GRANTED** and that this action be **DISMISSED** with prejudice. The Magistrate Judge also **RECOMMENDS** that this dismissal count as a **STRIKE** under 28 U.S.C. § 1915(g) for failure to state a claim; that this be considered the final judgment in this case; that any appeal **NOT** be certified as taken in good faith under 28 U.S.C. § 1915(a)(3); and that any pending motions be terminated as moot. The Magistrate Judge also **RECOMMENDS** that Plaintiff's Motion to Dismiss or Hold in Abeyance Defendants' Motion (Docket Entry 111) be **DENIED.**

### I. Background and Procedural History

Plaintiff, proceeding *pro se* and *in forma pauperis*, is a Tennessee Department of Corrections (TDOC) inmate at Riverbend Maximum Security Institution (RMSI). (Docket Entry 83). He was previously incarcerated at other institutions, including West Tennessee State Prison (WTSP) and Charles Bass Correctional Complex (CBCX). (Docket Entry 67). He alleges violation of civil rights under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized

Persons Act (RLUIPA). (Docket Entry 1 and 67). On January 24, 2014, the District Judge referred this action to the Magistrate Judge. (Docket Entry 4).

On June 30, 2014, Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction, which the Magistrate Judge recently recommended that the Court deny. (Docket Entry 80 and 114). On December 03, 2014, Defendants filed their Motion to Dismiss or for Summary Judgment (Defendants' Motion), supportive affidavits, and a statement of undisputed facts. (Docket Entry 104-109). Plaintiff has not responded. Plaintiff has filed a "Motion to Dismiss or Hold in Abeyance" Defendants' Motion. (Docket Entry 111). Defendants have not responded. Therefore, the matter is now properly before the Court.

## II. Standard of Review

### A. Motion for Summary Judgment

Pursuant to FED. R. CIV. P. 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case." *Adams v. Rockafellow,* 66 F. App'x 584, 585 (6th Cir. 2003)(unpublished opinion)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment." *Adams,* 66 F. App'x at 585 (citation omitted). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citation omitted).

If the nonmoving party fails to meet its burden, the Court may rely on the facts advanced by the moving party. *See Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). However, the Court may not grant a motion for summary judgment simply because a nonmoving party fails to respond. *See Miller v. Shore Fin. Servs., Inc.,* 141 F. App'x 417, 419 (6th Cir. 2005)(unpublished opinion). Instead, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller,* 141 F. App'x at 419 (citation omitted).

When a plaintiff is *pro se*, the Court will review the pleadings under "less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, "even *pro se* complaints must satisfy basic pleading requirements." *Dallas v. Holmes*, 137 F. App'x 746, 750 (6th Cir. 2005) (citation omitted)(unpublished opinion).

### III. Analysis

Plaintiff alleges denial of: (1) religious jewelry; (2) access to religious vendors; and (3) a religious diet, known as "Halaal" or "Halal" meals. (Docket Entry 67). Defendants argue, inter alia, that Plaintiff failed to exhaust administrative remedies. As explained below, the Magistrate Judge is unable to find that Defendants meet their burden to establish this affirmative defense. However, the Magistrate Judge finds that dismissal is proper based on the merits.

#### A. 42 U.S.C. § 1997e and Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. 1997e(a), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and Defendants have the burden of establishing this affirmative defense. *Jones v. Bock,* 549 U.S. 199, 212 (2007).

Here, Plaintiff asserts that he filed:

1. A grievance dated May 25, 2012 against WTSP officials for denial of Halaal meals.
2. A grievance dated June 11, 2012 against WTSP officials for denial of Halaal meals.
3. A grievance dated March 26, 2013 against WTSP officials for denial of Halaal meals.
4. A consolidated grievance dated July 04, 2013 regarding food during Ramadan.
5. A consolidated grievance dated August 02, 2013 regarding non Halaal menu.

(Docket Entry 67, pp. 6; 8; 9; and 46). Defendants identify the following grievances that Plaintiff filed:

1. A grievance dated May 25, 2012 against WTSP officials for denial of Halaal meals.
1. A grievance dated June 11, 2012 against WTSP officials for denial of Halaal meals.
2. A grievance dated August 09, 2013 in which Plaintiff requested a transfer.
3. A grievance dated May 26, 2014 against Defendant Haskins.
4. A grievance dated June 02, 2014 against Defendant Haskins.

(Docket Entry 105, p. 3; Docket Entry 106; Docket Entry 109).[1] Defendants do not identify any grievances related to denial of jewelry or access to vendors and do not stipulate that Plaintiff failed to file such grievances. Moreover, Defendants argue that "[b]ecause the plaintiff signed his Complaint on [January 2, 2014], any claims which are alleged to have arisen prior to January 2, 2013 are barred by the one year statute of limitations . . . ." (Docket Entry 105, p. 5). However, any statute of limitations is tolled during the pendency of a grievance procedure. *See Brown v. Morgan,* 209 F.3d 595, 596 (6th Cir. 2000)("civil rights action was tolled for the period during which . . . available state remedies were being exhausted."). Defendants' argument also ignores

---

1 (Docket Entry 105, p. 3). Defendants cite copies of grievances that Plaintiff filed and admonish Plaintiff for failing to provide copies of other grievances. To the extent that Defendants suggest that Plaintiff had a burden to prove exhaustion, they are mistaken. *See Jones,* 549 U.S. at 212. Defendants also argue that Plaintiff's grievances were untimely "because the attempted 'exhaustion' was concluded prior to [the] start of the one-year statute of limitations." This argument is mistaken because a statute of limitations start date *necessarily follows* exhaustion.

that claims under the RLUIPA are subject to a four year statute of limitations. *See Al-Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009)(unpublished opinion)(citing 28 U.S.C. § 1658 (2006); *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382 (2004)). Therefore, the Magistrate Judge is unable to find that Defendants establish failure to exhaust as to Plaintiff's to denial of jewelry and denial of access to vendors claims.

Likewise, Defendants do not meet their burden regarding Plaintiff's religious diet claim. Defendants first address the May 25, 2012 grievance, in which the grievance chairperson notified Plaintiff that he was indeed approved to receive Halal meals. (Docket Entry 1, p. 55). The chairperson added, "I am returning your grievance as the issue does not exist. Now if you have another issue, then rewrite a grievance and turn it back in for processing." (Docket Entry 1, p. 55). Although that grievance was considered resolved, Plaintiff submitted another related grievance on June 11, 2012, in which he stated that "no Muslims have yet to receive the Halal meals . . . ." (Docket Entry 1, p. 46). Defendants concede that this grievance procedure was exhausted on July 30, 2012. (Docket Entry 105, p. 3).

Up until July 30, 2012, the statute of limitations would have been tolled as to the § 1983 claim. *See Griffin v. Eidson,* 22 F. App'x 393, 395 (6th Cir. 2001)(citation omitted)(unpublished opinion)("For § 1983 actions arising in Tennessee, the statute of limitations is one year."). It would have started to run on July 31, 2012, ending on July 30, 2013. At any time during that year, Plaintiff could have filed a Complaint. However, Plaintiff did not file until January 07, 2014. (Docket Entry 1). Instead, he filed successive grievances about his diet. (Docket Entry 67, pp. 8-10). Typically, a plaintiff cannot toll a statute of limitations by filing successive grievances except under a narrow exception known as the continuing-violation doctrine. *Wu v. Tyson Foods, Inc.,* 189 F. App'x 375, 379 (6th Cir. 2006)(unpublished opinion)(A plaintiff must prove a policy

"of intentional discrimination against the class of which [he] was a member . . . ."). However, even if Plaintiff's § 1983 claim is not time barred based on this exception, Plaintiff's RLUIPA claim is definitely not time barred based on the four year RLUIPA statute of limitations. Defendants do not address tolling or the RLUIPA statute of limitations. Therefore, the Magistrate Judge is again unable to find that Defendants meet their burden and moves on to consider the constitutional merits.

### B. Constitutional Merits

In order to state a claim under 42 U.S.C. § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citation omitted). To state an equal protection claim under § 1983, a plaintiff must prove "the existence of purposeful discrimination." *McCleskey v. Kemp,* 481 U.S. 279, 292 (1987)(citation and internal quotation omitted).

Separately, "RLUIPA prohibits the imposition by any government of a substantial burden on the religious exercise of a prisoner, unless the government can show that such imposition is the least restrictive means of furthering a compelling governmental interest." *Figel v. Overton*, 121 F. App'x 642, 646-47 (6th Cir. 2005)(unpublished opinion)(internal quotation omitted)(citing 42 U.S.C.A. § 2000cc-1(a)).

Here, Plaintiff brings this action pursuant to the free exercise clause of the First Amendment and the RLUIPA. (Docket Entry 67, p. 1). He also brings at least his denial of religious jewelry claim pursuant to the equal protection clause of the Fourteenth Amendment. (Docket Entry 67, pp. 11-12).

He argues that he is "discriminated against" because the TDOC approved vendor, Union Supply, does not offer "a single religious necklace for Muslim inmates, whatsoever." (Docket

Entry 67, p. 11). Next, he argues that he "is being forced to order Prayer Oils, Prayer Rugs, Kufis [(hats)], and Prayer Beads from Union Supply Company instead of being able to utilize Halal/Islamic vendors . . . ." (Docket Entry 67, p. 18). He argues that the "sky-rocketed prices of the items that Union Supply Company has placed on these items" constitutes usury. (Docket Entry 67, p. 20). He argues that even free world clergy, volunteers, or organizations must utilize Union Supply Company if they wish to donate items to Plaintiff. (Docket Entry 67, pp. 18-19). Finally, Plaintiff argues that the TDOC menu is not "in accordance with the Islamic standards" and that "he is neither a vegetarian nor vegan but is forced to be as such by being denied a diet consistent with Islamic tenets." (Docket Entry 67, pp. 17-18). He argues that although TDOC has procured an "Imam" to bless the food production facilities, this "cannot be considered as being that of Halaal according to the tenets of Islam" because the actual meat is not blessed when slaughtered. (Docket Entry 67, pp 16-17).

### i. Denial of Religious Jewelry

Defendants submit the affidavit of Jeannie Alexander, Chaplain of RMSI, who states that although Union Supply does not have the necklace that Plaintiff requests, she will obtain one for Plaintiff "from an alternate vendor[], or by way of donation . . . ." (Docket Entry 92, p. 2). She states that Plaintiff can "receive a necklace from the free world, provided that it does not exceed 24 inches in length and does not exceed a maximum replacement value of $30.00." (Docket Entry 90-2, p. 3). Therefore, the Magistrate Judge finds that Plaintiff can obtain a necklace as desired, and that this claim is moot.

### ii. Denial of Access to Religious Vendors

Defendants argue that Plaintiff's claim must fail under the test set out in *Turner v. Safley*. (Docket Entry 105, pp. 9-10).

> First, the prison regulation must have a valid and rational connection to the legitimate and neutral government objective put forward to justify it. Second, the court must determine whether there are alternative means of exercising the right that remains open to prison inmates. Third, the court should consider the impact that accommodating the asserted constitutional right will have on the guards and other inmates, and on the allocation of prison resources. The fourth factor is whether there are ready alternatives to the prison regulation.

*Pollock v. Marshall,* 845 F.2d 656, 658 (6th Cir. 1988)(citing *Turner v. Safley,* 482 U.S. 78, 89-91 (1987). However, before addressing this test, the Magistrate Judge finds that Plaintiff is already in possession of a prayer rug "which had been donated by a free world volunteer." (Docket Entry 105-1, p. 61; Docket Entry 106, p. 3). Also, the Chaplain of RMSI was in the process of "obtaining a kufi from a local organization that would provide a better fit" as of August 18, 2014. (Docket Entry 92, p. 2). Therefore, Plaintiff's claim boils down to a denial of access to unapproved vendors for purchasing his prayer oil and prayer beads.

Turning to the *Turner v. Safley* test, the Sixth Circuit has held that "[p]rison officials have a legitimate interest in ensuring that prisoners are not sent contraband through the mail. Therefore, prison regulations which require inmates to purchase goods only from authorized vendors have been upheld as valid by this court." *Spruytte v. Feighner,* 16 F.3d 1221, at *1 (6th Cir. 1994)(citation omitted)(unpublished opinion). Therefore, the disputed vendor policy satisfies the first factor. There are also alternative means of obtaining requested items through the Chaplain. Also, Plaintiff's request to purchase items directly from other vendors would require "screen[ing] each individual vendor to ensure that [its] products were safe, and did not contain contraband or security threat group materials." (Docket Entry 93, p. 2). Although there are undoubtedly alternative vendors, TDOC contracted with Union Supply only after a "bidding process." (Docket Entry 93, p. 2). Ultimately, the Magistrate Judge finds no genuinely disputed material fact as to whether the vendor policy is "reasonably related to legitimate penological interests" and finds that Plaintiff fails to state a claim. *Turner,* 482 U.S. at 89.

Finally, Plaintiff's RLUIPA claim is that he is suffering a substantial burden because he only has access to Union Supply and not to other vendors. Plaintiff objects to the smell of the oil from Union Supply, argues that the price is "exorbitant," and states that he has concerns about whether the oil is "officially blessed." (Docket Entry 67, p. 18; Docket Entry 105-1, pp. 61-62).

In *Living Water Church of God v. Charter Tp. of Meridian*, the Sixth Circuit framed the following question, "although the government action may make [Plaintiff's] religious exercise more expensive or difficult, does that government action place substantial pressure on [Plaintiff] to violate [his] religious beliefs or effectively bar [Plaintiff] from using [his] property in the exercise of its religion?" *Living Water Church of God v. Charter Twp. of Meridian,* 258 F. App'x 729, 739 (6th Cir. 2007). More recently, in *Holt v. Hobbs*, the plaintiff "easily satisfied [the] obligation" to show a substantial burden on his religious exercise where prison policy required him to shave his beard in violation of the mandates of his religion. *Holt v. Hobbs,* 135 S. Ct. 853, 862 (2015). The plaintiff therein was faced with "engag[ing] in conduct that seriously violates [his] religious beliefs." *Holt,* 135 S. Ct. at 862 (citation and internal quotations omitted).

Here, although the prayer oil and beads may be more expensive from Union Supply than from other vendors (Docket Entry 67, pp. 22-23), the Magistrate Judge finds that Plaintiff fails to show how this places unreasonable pressure on him to violate his religious beliefs. Although Plaintiff is permitted to keep oil in his cell and purchase beads, he chooses not to because of his objection to the Union Supply selection and price. (Docket Entry 105-1, p. 63). The Magistrate Judge is not unsympathetic to the price difference Plaintiff identifies between vendors. However, although compliance with this policy makes practicing Plaintiff's religion more expensive, the Magistrate Judge cannot find that the policy is "inherently inconsistent with the [plaintiff's] beliefs." *Episcopal Student Found. v. City of Ann Arbor,* 341 F. Supp. 2d 691, 702 (E.D. Mich.

2004)(citing *Braunfeld v. Brown,* 366 U.S. 599 (1961). Moreover, Plaintiff relies on conclusory statements that his religion's restriction against usury includes a restriction against purchasing products at "inflated prices" and that Union Supply's prices qualify as usurious. Therefore, the Magistrate Judge finds that Plaintiff fails to establish a substantial burden.

### iii. Denial of Religious Diet

It is well established that "Muslim prisoners do not have a right under the First Amendment or the RLUIPA to be provided halal meat entrees; rather, a correctional facility need only provide Muslim prisoners with food that is not 'haram' (impermissible)." *Cloyd v. Dulin,* No. 3:12-CV-1088, 2012 WL 5995234, at *4 (M.D. Tenn. Nov. 30, 2012)(citing *Abdullah v. Fard,* No. 97–3935, 1999 WL 98529 at *1 (6th Cir. Jan.28, 1999)(unpublished opinion)). Plaintiff argues that he faces a substantial burden because he is forced to eat "foods that are considered as being Haram (Forbidden/Prohibited) for consumption by Islamic dictates." (Docket Entry 67, p. 15). However, Defendants submit the affidavit of Defendant Haskins, Chaplain at CBCX. (Docket Entry 106). Therein, Defendant Haskins states that after a Halal meal became available at CBCX, Plaintiff declined to eat it "because he did not have confidence in the credibility of the Imam who approved the menu. Instead, he continued to eat off of the regular prison menu, despite having a Halal option." (Docket Entry 106, p. 2). Defendants also submit the affidavit of Defendant Amonett, TDOC Food Service Director. (Docket Entry 107). Defendant Amonett states that "[p]risoners are afforded an alternative diet, as well as a certified Halaal menu." (Docket Entry 107, p. 2). In Plaintiff's deposition, taken after his transfer to RMSI, Plaintiff engages in the following exchange:

Q. So you are getting a kosher meal?

A. Yes, ma'am.

> Q. Do you still have complaints then about the food that you are eating?
>
> A. Not about the food that I'm eating, but about the menu that is in place for Muslims. I have to forego the halal diet and partake of the Jewish menu. My complaint is if there is a Muslim menu, I want to partake of the Muslim menu . . . .

(Docket Entry 105-1, p. 30). Although Defendants argue that Plaintiff's claim is moot, Plaintiff argues that the menu "is not a Halaal menu at all." (Docket Entry 102, p. 4; Docket Entry 105, p. 15). Taking as true that Plaintiff must forego the Halal diet because of his lack of confidence in the local Imam or otherwise, Plaintiff still has access to the kosher and the alternative meals. In Plaintiff's deposition, he states that the alternative menu "still contain[s] ingredients that are considered haram [forbidden]. . . ." (Docket Entry 105-1, p. 30). Still, Plaintiff has the kosher meal, which he acknowledges that he is receiving. (Docket Entry 102, p. 4). "[A]s long as a plaintiff is given an alternative to eating non-halal meat, he does not suffer a 'substantial burden' to his religious beliefs under the RLUIPA." *Cloyd v. Dulin*, No. 3:12-CV-1088, 2012 WL 5995234, at *4. Likewise, even to the extent that a vegetarian option is the only one available, Plaintiff's "First Amendment claim fails because the disputed policy [does] not force him to violate his religion." *Abdullah*, 173 F.3d 854 at *1(citation omitted). To the extent that the Court would construe an equal protection claim here, it too fails because Defendants establish that TDOC officials have made accommodations for those who practice Plaintiff's religion. *See Abdullah*, 173 F.3d 854 at *2. Therefore, the Magistrate Judge finds a lack of any genuinely disputed material fact and finds that Plaintiff fails to state a claim

Therefore, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's claims for denial of a religious diet, access to other vendors, and religious jewelry, and that these claims be **DISMISSED** with prejudice.

**IV.     Plaintiff's Motion to Dismiss or Hold in Abeyance Defendant's Motion**

Pursuant to FED. R. CIV. P. 56(d), if a nonmovant declares that he is unable to oppose a dispositive motion, the court has discretion to "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d). Sixth Circuit courts consider five factors when deciding whether to grant a Rule 56(d) Motion:

1. when the party seeking discovery learned of the issue that is the subject of the desired discovery;

2. whether the desired discovery would change the ruling;

3. how long the discovery period lasted;

4. whether the party seeking discovery was dilatory in its discovery efforts; and

5. whether the non-moving party was responsive to discovery requests.

*Plott v. Gen. Motors Corp.,* 71 F.3d 1190, 1196–97 (6th Cir.1995)(citation omitted). To obtain discovery by a Rule 56(d) motion, the party seeking discovery must submit more than "[b]are allegations or vague assertions of the need for discovery . . . ." *Summers v. Leis,* 368 F.3d 881, 887 (6th Cir. 2004)(citation omitted). The movant "must state with some precision the materials he hopes to obtain . . . , and exactly how he expects those materials would help him in opposing summary judgment." *Summers,* 368 F.3d at 887 (citation and internal quotation omitted).

Here, the Magistrate Judge entered a Scheduling Order on May 05, 2014 in which all written discovery was to be completed by November 03, 2014. (Docket Entry 65, p. 2). Plaintiff filed his Motion on January 12, 2015, requesting that the Court "dismiss, or hold in abeyance" Defendant's Motion. (Docket Entry 111, p. 1). Plaintiff declares that on March 21, 2014, he sent Defendants a "Request to Produce Documents and Tangible Things" and that on June 19, 2014, he sent Defendants a second request in the form of a "Motion for Interrogatories and Request for

Production of Documents." (Docket Entry 111, pp. 1-2). Plaintiff declares that Defendants completed the second, but not the first request in August, 2014. (Docket Entry 111, p. 2). Plaintiff sent multiple letters to Defendants to ask about the status of his first request. (Docket Entry 111, pp. 1-2).

The Magistrate Judge finds that Plaintiff acted swiftly upon realizing that Defendants had not complied with his first request for discovery. His correspondence with Defendants shows he was not dilatory. His record of this correspondence also shows that he had an opportunity to engage in discovery and that Defendants "completed the Plaintiff's Interrogatories and [second] Request For Production of Documents . . . ." (Docket Entry 111, p. 2). However, Plaintiff was dilatory in filing his Motion over one month after Defendants' Motion. Yet, it is apparent that Defendants' were unresponsive to the initial request. Nonetheless, the Magistrate Judge finds that the requested discovery would not change the outcome in light of the recommended dismissal and the expansive nature of the request. Plaintiff requests documents from as far back as 2005 and grievance logs from other TDOC Muslims. (Docket Entry 111-2). Moreover, Plaintiff fails to state with precision how these would help him in opposing Defendant's Motion. Instead, he asserts that the materials are "unmistakenly [sic] different" from the interrogatories and "needed in order to mount the proper and sufficient response to oppose [Defendant's Motion]." (Docket Entry 111, p. 2). These conclusory statements do not persuade the Magistrate Judge.

## V.     Recommendation

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that Defendant's Motion to Dismiss or for Summary Judgment (Docket Entry 104) be **GRANTED** and that this action be **DISMISSED** with prejudice. The Magistrate Judge also **RECOMMENDS** that this

dismissal count as a **STRIKE** under 28 U.S.C. § 1915(g) for failure to state a claim; that this be considered the final judgment in this case; that any appeal **NOT** be certified as taken in good faith under 28 U.S.C. § 1915(a)(3); and that any pending motions be terminated as moot. The Magistrate Judge also **RECOMMENDS** that Plaintiff's Motion to Dismiss or Hold in Abeyance Defendants' Motion (Docket Entry 111) be **DENIED.**

Under FED. R. CIV. P. 72(b), the parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 5th day of March, 2015

                                            /s/Joe. B. Brown_____
                                            Joe B. Brown
                                            United States Magistrate Judge